[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR DEFICIENCY JUDGMENT
This motion for deficiency judgment was an extraordinary long process and this court held hearings on various dates between February 27th, 1991 and August 22, 1991 in an attempt to ascertain the value of the property foreclosed by the plaintiff as of October 19th, 1990. This court heard testimony from four different appraisers, a marketing expert witness, an engineering construction expert witness, two or more witnesses familiar with motel management and one of the defendants who was familiar with the operation of the subject property for a number of years.
The plaintiff first presented an appraisal by Arthur Anderson Co. which was authored by David Outhred. After a total review of all of the evidence presented this court has placed little if any weight on the testimony and opinion of Arthur Anderson as expressed through its agent David Outhred. The court finds that in fact Arthur Anderson prepared approximately four appraisals with values as high as $2,250,000 down to $950,000 testified to by Mr. Outhred. There were however a number of conferences and contacts with Mr. Richard McDermott, Chief Appraiser for the plaintiff bank and others connected with the bank. This court finds that the Arthur Anderson appraisals were not truly independent appraisals and were substantially influenced by the plaintiff acting through its agents, servants and employees to produce an unrealistically low value.
The plaintiff next produced as an appraiser, Philip A. Goodsell, who testified that the property had a value of $950,000. While Mr. Goodsell's appraisal appeared to be of an independent nature and not subject to the type of influence referred to above in the Arthur Anderson appraisal, his computation of the income approach which appears on pages 35 and 36 of his appraisal (Exhibit E) seems to be totally unrealistic. He first of all uses what he refers to as a blended figure for 1990 expenses and income and indicates that he is not quite able to explain that the actual net operating income for 1990 was sixty thousand dollars higher than the projected first year income for the subject within his own cash flow analysis. In addition, he projects an occupancy rate of 29.28% which in view of historical data is totally unrealistic. Lastly, while most of the industry accepts capitalization rate of 11.5% to 12.5% which Mr. Goodsell admits, he chooses to use capitalization rate of 14%, which this court again finds not realistic.
While the evidence and testimony submitted by the witness Hopgood was informative particularly as it related to marketing, she did not testify as an expert on CT Page 9574 valuation and therefore her testimony was merely a background. It did not add too greatly to this court's arriving at a value.
The spread of the appraiser's in this particular case is the largest percentage wise and dollar wise that this court has experienced in its career both as a lawyer and a judge. The lowest of the four appraisals was nine hundred thousand dollars and the highest was four million one hundred thousand dollars. The highest appraisal being approximately four and one-half times greater than the lowest appraisal.
The plaintiff also produced a construction engineer expert, Mr. Robert Wickham. He testified that the estimated cost of renovations was $1,800,000 and this court frankly finds that all of his estimates were excessively high. For example, he estimated landscaping in the amount of $45,000. This court has lived approximately one and a half miles from the location of the subject property since it was built in 1974. There are no lawns and practically no land area that can be landscaped. When cross-examined on how he arrived at this figure he was totally incapable of giving any sensible answer or justifying the $45,000 figure. Based on other witnesses testimony as to the cost of renovation which ranged from $440,000 to $650,000 to $930,000 as used by Mr. Silverstein, Mr. Wickham's costs were totally out of hand. It must also be remembered as Mr. Silverstein pointed out in his appraisal that we are attempting to appraise the value of a seventeen year old facility and Mr. Wickham's estimates are excessive in relationship to new construction.
The defendant presented as an appraiser Mr. Robert J. Flanagan of Waterford, Connecticut. His estimate of the value of the real estate was $4,100,000 but he readily admitted that he did not take into consideration the cost of renovation. In addition he relied heavily in all of his estimates, computations and analysis on the fact that the adjacent restaurant property would be open and operating. This court had no evidence that that would be the case. This court was impressed with Mr. Flanagan's knowledge of the motels in the general Old Saybrook area and more specifically south eastern Connecticut. Of all the four appraisers he seemed to have the broadest and deepest knowledge but his appraisal was flawed by the absence or inability to establish an amount for renovation which all parties agreed was necessary and his assumption that the restaurant would be operating. CT Page 9575
This leaves us with the last of the four appraisers F. Jerome Silverstein who was presented by the defendant. This court finds that Mr. Silverstein's appraisal of $3,200,000 appeared to be the most thorough and most accurate with regard to the subject property.
This court is aware that Mr. Silverstein originally prepared a much higher appraisal which is an exhibit in this case but this court's determination of value is based on Mr. Silverstein's second appraisal (defendant's Exhibit 17) which analyzed the cost of renovation and found them to be $913,000.
It is interesting to note that in Mr. Silverstein's analysis by using both the cost approach, the direct sales approach and the income approach, he arrives at nearly the same figure. In analyzing Mr. Silverstein's report this court was somewhat disturbed by his, first of all cost approach in which he placed the land value at $1,240,000. As of October 19, 1990 a 2.65 acre parcel of commercially zoned land in Old Saybrook having no public sewer could not possibly command or have a value anywhere near that ascribed to it by Mr. Silverstein. A value of one-half of that or $620,000 would probably be extremely difficult to obtain on the open market in view of the lack of sales for the year and one-half prior to October 19, 1990. In addition, Mr. Silverstein's occupancy and room rates appeared to be overly optimistic in view of other witnesses' testimony and findings. This court finds the value of the subject property foreclosed by the plaintiff as of October 19, 1990 to be $2,600,000.
In arriving at the above figure this court resisted the obvious temptation to attempt to take the high and low appraisals and average them out. Rather this court sought to analyze independently each of the appraisals and arrive at the fair market value as of October 19, 1990. This court finds that the debt due the plaintiff as of October 19, 1990 was $3,319,735.93. By subtracting the value of the property as of the date title vested namely $2,600,000 the court finds a deficiency in favor of the plaintiff in the amount of $790,735.93. In addition the plaintiff's counsel seeks $42,549 for attorney's fees in connection with the foreclosure. After a review of the affidavit and the time sheets submitted, the court disallowed 106.7 hours at a blended rate of $200.00 for a total of $21,340. This would leave $21,209 which the court rounded out in attempting to find a reasonable attorneys fee to $20,000. Plaintiff's counsel also sought counsel fees in the amount of $75,000 for the deficiency hearing and in CT Page 9576 analysing the time request the court is disallowing 140 hours at a blended rate of $200.00 or $28,000 leaving a balance of $47,000 and in applying the measure of reasonableness to the attorney's fees the court has rounded that to $45,000. Plaintiff has also made a request for certain expert witness fees and the court makes the following allowances. Witness Suzanne Hopgood, $2,000.00; witness Robert Wickham, $1,000.00; witness Arthur Anderson Co., $1,000.00; witness Philip Goodsell, $12,000.00 appraisal, $1,000.00 court appearance. After adding the attorneys fees and witness fees as stated above, the court hereby enters deficiency judgment jointly and severally against all three defendants in the amount of $872,735.93 together with interest at the statutory rate on $790,735.98 from October 19, 1990 and cost (exclusive of expert witnesses.
O'CONNELL, J. Judgment Entered in Accordance with The Foregoing Memorandum Of Decision.
Michael Kokoszka Chief Clerk